Okay, will the attorneys please stand up, come up to the podium. Please state your names, tell the court who you represent, and approximately how long your argument will take. Good morning again. Good morning, your honor. Rosa Toomey Allen for State Farm. I expect my argument, I would like to reserve four minutes for rebuttal. Wait, but how long will your argument take? Ten minutes? Ten to eleven minutes, Judge. Okay, very good. Good morning, counsel. Good morning, your honor. Dave Oppenheim for Bridgeview Health Care, and I'll hopefully not take the full 15 minutes. Okay, very good. Okay, Ms. Timoline, you may proceed with your counsel. Yeah, fine. Vincent Laverie, I represent Jerry Clark, and we are not planning to argue your line with Bridgeview in this case. Okay, very good. Thank you. May it please the court. Again, my name is Rosa Toomey Allen. I represent State Farm, the appellant in this matter. This appeal asks the court to consider whether the trial court properly concluded that there was no conflict between the laws of Illinois and Indiana, where the only case law in Indiana consists of a federal district eerie prediction. This court should find that that conclusion was an error, because Illinois state courts can and do have the discretion to look to federal district case law persuasive authority in all other contexts, and there should be no difference, no distinction, when an Illinois state trial court must look to persuasive authority in the conflicts context. To allow that rule to stand, the rule that was announced in the ex data opinion, permits forum shopping. It disrupts the otherwise well-established jurisprudence where state courts are able to look to all available data, anything available to them for the purposes of ascertaining state law. Do you know of any other states in a situation where a sister state has not stated what the law would be, and you have federal cases concluded the same as in the ex data case? No, Your Honor. Actually, ex data stands on its own. It is the only case of its kind that we were able to locate. In fact, the United States Supreme Court precedent, or opinion in Phillips Petroleum versus Schutz holds the opposite. That's from law school. Excuse me? That's from law school. That's correct. And what's interesting about the ex data opinion is that it really carves out and creates a distinction, and if you will, it creates a precondition to the conflicts analysis that doesn't exist anywhere else in the country. And no other state, federal or state trial court, has this precondition. And that is that there be binding precedent before you can actually consider whether or not there's a conflict. That's an unspoken precondition in the ex data opinion. There's no basis for that precondition. There's no justification announced in the ex data opinion for that, much less advanced by Bridgeview in this appeal for the retention of such a rule. What it does is it constrains Illinois state trial courts. It creates a distinction, and it invites forum shopping, because you do have a distinct conflict within the district between ex data and the Sears Roebuck opinion. Sears Roebuck states what every other state in the union states, which is that state courts, federal courts, have and can look to all available data, which can include an eerie prediction for purposes of ascertaining what that other state's law is. But ex data, for reasons that are not at all clear, states that in the conflict situation, the court need not even get to whether or not there's a conflict if the only other precedent is persuasive authority. What ex data does is it invites courts, future courts, to further hamper a trial court's analysis, further hamper a trial court's judicial process. The very purpose that the court was entrusted to accomplish was to ascertain and define law. And ex data unreasonably and unjustifiably curtails that purpose, curtails that process. And that's exactly what happened here, in that Judge Novak did not even consider what the law might be in Indiana, because there wasn't any. That's correct. And she felt compelled to follow ex data. She did. And she felt compelled as well to try and reconcile the conflict, the clear conflict, between the Sears Roebuck opinion and the ex data opinion. And what she did was the only reasonable thing available to her, which is to say that Sears Roebuck applies everywhere else except in a conflict situation. That's the only rule of its kind in the country. And it will wreak havoc and has wrought havoc, because what we have here is we have a situation where State Farm issued this policy in Indiana, received a tender in Indiana, evaluated its obligations under Indiana law, and then filed a declaratory judgment action in Indiana State Court to confirm its coverage position. Because Indiana has a necessary party rule just like Illinois, Bridgeview, the claimant, was named as a necessary party defendant in that case. But consistent with what ex data will invite, Bridgeview challenged personal jurisdiction, prevented the Indiana State Court from actually addressing the question that has not yet been addressed by Indiana State Courts. And then they file their competing action in Illinois. State Farm is unable to establish that the court will be able to constitutionally assert personal jurisdiction over Bridgeview in Indiana. So it must voluntarily withdraw or dismiss its complaint. And then it must refile or file a counterclaim in Illinois State Court, where then it engages in the choice of law analysis. Bridgeview then sits back and asserts and relies on ex data, saying that now there is no, you don't have to do a conflict analysis because the default goes to Illinois because we have no law. But the faulty premise there is that the absence of precedence does not mean there is no law. What that means is the court is to engage in exactly what the court is supposed to engage in, the judicial process of determining or ascertaining that law. So, for example, it could have weighed the Federal cases? Yes. Yes. She needed to. The trial court was not even able to do it. It was preemptively, the process was preemptively stopped because she never got past the first, she never got to the first step. Ex data prevented her from getting there. And ex data will prevent future courts from getting there. And it's, again, the only rule of its kind. Although Bridgeview tries to advance the justification that, as opposed to encouraging form shopping, what this does is provide certainty in the jurisprudence, it actually doesn't. It disrupts established jurisprudence. It creates an artificial distinction between what a judge does when ascertaining and applying law as opposed to ascertaining what the law is for purposes of a conflict analysis, with, again, no reason for that distinction. And then it creates a default, an unnatural default to Illinois law. So is it your position that Indiana is the state with the most significant contacts? Yes, Judge, it is. If we get to that part of the test, yes. Indiana is the state with the most significant contacts. Contract was issued there. Contract was purchased there, performed and serviced there. The fact that Illinois happens to have jurisdiction over a TCPA class action lawsuit doesn't mean that Illinois has significant contacts so as to warrant application of Illinois law by default or otherwise. So what's your prediction as to what Indiana courts would do if they were presented with this problem? Well, my prediction would be that Indiana state courts would follow the American states analysis, which basically what you have is two camps. You have the secrecy versus seclusion camps, and either they are the same for purposes of coverage or there's a difference. But didn't American states make an incorrect prediction about what Illinois would do? Yes, a prediction of Illinois law, that's correct. However, we have no indication that, and the question of whether or not there's a conflict doesn't turn on the correctness of the prediction, but whether or not that prediction can create a conflict. Phillips Petroleum versus Schutz teaches us that it can. And the part that was cited in the Bridgeview brief is to the dissent. Justice Stevens' dissent to the majority opinion, which said that Kansas Supreme Court cannot apply Kansas law to 100% of the claims in that class action, even just because, or excuse me, because Texas law, as predicted by a federal district court, conflicted with how Kansas law would come out on the issue of royalties due under the oil gas leases. Same thing with Oklahoma. The court found that there was a conflict. And what the court said specifically in its opinion, it rejected the dissenting opinion's statement that that was a false conflict because it said that the Supreme Court did not analyze those opinions sufficiently to be able to arrive at that conclusion. So what Schutz teaches is that for purposes of determining whether a conflict can exist, that conflict can be created by persuasive predictive authority, such as an eerie guess, like we have in Indiana. But without a more thorough review of those cases and the cases, maybe Indiana's state court's tendency to adopt and approve of federal district predictions, as we actually have, we have an example of that in the briefs. Bridgeview cites two heritage mutual versus advanced polymer. It's a Southern District of Indiana case issued in 2000. And then also Hoosier Insurance Company versus Audiology Foundation, an Indiana state court appellate opinion issued in 2001 for the proposition that property damage analysis in Indiana is the same as in Illinois. However, if you read those cases, it shows you that Judge Barker in the Southern District of Indiana considered the definition of misappropriation of a style of doing business. That's not what's at issue here, but what's important is that that's the same clause that was at issue in Hoosier, and Hoosier, the state court, implicitly adopted the definition of what the Southern District said that phrase meant. And by doing so, that suggests that Indiana state courts are more in tune with what the federal district predictions are of that state's law. Not to mention the fact that what Exadata does at its basis term, what it says is that a decision that comes out of Dearborn and Washington, for instance, means something. But when that decision comes out of 219 South Dearborn, it doesn't mean anything for purposes of a conflict. The disregarding of a well-established, well-reasoned body of law, just because the court happens to be engaged in a conflicts of law analysis, does not make sense. It invites form shopping. It's already occurred here. We've had a situation where we couldn't even stay in Indiana state court because Bridgeview challenged personal jurisdiction. That will continue to happen. Is it true that the two federal district court decisions from Indiana are unpublished? No, Your Honor. I believe they are published. But I can check on that. But I do believe they are published. At least one of them is published. I think they're unpublished. How much should we rely on an unpublished decision? The federal district courts, well, those decisions are still valid predictions of Indiana law. They resolve the actual case in controversies before that court. The fact that there was a question of first impression in Indiana that happened to be decided by a federal district court, again, goes to the fact that the court didn't pass the question. It did not address it, did not abstain from resolving the controversy. It did. And in doing so, it applied the principles of Indiana law and predicted that Indiana would find, conclude that there is no coverage for TCPA violations under general liability policy, such as the one at issue here. But I guess the question really isn't whether it's published or not, but the weight the court would give, if any, to those federal decisions. And what you're saying is at least the court should do the analysis and whether the analysis comes up the same as the federal district courts or at least there's something there to look at. Yes. And there might be others. What you're suggesting is there's a Supreme Court case, a Hoosier case, out of Indiana, too, that may provide other aspects of this. Make it clear. Yes. What State Farm is looking for here is not to supplant one absolute rule with another one. The absolute rule that's created by X data does not work. It promotes form shopping. It disrupts expectations under contracts. What State Farm is looking for is a rule that's consistent and comports with established jurisprudence. State courts routinely look to predictive authority, other secondary authorities, published or unpublished, treatises, law review articles, commentaries. There's examples, our legion, especially in amicus briefs submitted to the court, there was examples such as the court in Sterling, the Illinois court in Sterling, looked to commentaries discussing statutes and cases considering the scope of the attorney-client privilege under New York law to conclude that because the New York law was unclear that there might be a conflict and as such then went to the most significant context test in that case. That's all we're looking for here is for the court to be able to use all the available assets or tools to it and to be able to conduct the judicial analysis that has been asked to conduct. The X data opinion preempts the process. It unnecessarily ties the judge's hand behind her back and for no reason other than it's a conflict situation. If parties agreed that Indiana law applied, then there would have been no question that under Sears Roebuck, the court would have considered that authority in determining what Indiana state law is for purposes of its application. The distinction between, to say that there's a distinction between the conflict analysis and the application analysis is artificial and improperly preempts the process. What State Farm is asking for, Your Honor, is an order reversing the summary judgment in favor of Bridgeview and granting a remand with instructions for the court to consider the federal district case law that she was unable to consider in light of X data and for the purpose of determining whether a conflict exists and then to continue the choice of law analysis as appropriate. Thank you. Thank you. Mr. Berman. Mr. Oppenheim. David Oppenheim. Mr. Oppenheim. Okay. Again, I'm sorry I was late. Your Honors, this is a first for me, standing up in an appellate court where I can truly, honestly say to the panel in front of me, this is the same case that you decided before. The only thing that's different between this case and X data is the names of the parties. And what Judge Palmer did in the circuit court in X data and what this court did in its analysis is it followed the longstanding Illinois rule stated recently by the Supreme Court in the Townsend case, in this case and the landmark case as well, all of which we've cited, that unless there is a true actual outcome determinative conflict in state law, that Illinois law applies. The only time that there is a necessity to do a choice of law analysis is if, number one, there's no agreement by the parties on what law applies, and number two, there is an actual conflict between precedent in state A and precedent in state B. So you disagree that this is an outlier case and that the cases across the country and other states, what's the case that can you cite from other jurisdictions that come down the same way as X data? Frankly, Your Honor, we haven't focused on that. I don't know of any cases that come out contrary to X data. Well, do you agree that there aren't any that come out the same as X data? In other states? Yes. Well, we cited a body of case law from Indiana. I know it exists in various other states, wherein those states hold that federal predictions of their law are not entitled to deference in their own state courts. That's a different issue. Yeah. Well, but I think it's really the same issue, because what State Farm is asking Your Honors to do and why it doesn't surprise me very much that no one else has really asked for this, is to take a prediction as opposed to a statement of law and bootstrap it into a statement of law such that the trial court in this case can take that prediction and say, aha, that's a prediction that conflicts with what I know Illinois to be, and I like it, so I'm going to then take that as a statement of the other state's law, do my conflict analysis, and then apply it. And if that were, in fact, the rule, then the long line of cases that say you need an actual conflict would be meaningless. Well, but there is an actual conflict if you look at the federal cases. Well, but my point is, where does that end? Because the federal cases are not statements of Indiana law. The Indiana courts agree on this. The Illinois courts agree on this. So if you can take that, those cases, to be your threshold conflict of law, what's to stop a judge from saying, well, gee, I read a treatise the other day that makes me think that Indiana might be different, or I read an article in the law bullet that makes me think Indiana just might be different. I think the weight of the argument rather than the issue. Well, again, I think that there's a fundamental difference, and this gets back to what our Supreme Court has said our rule is in Townsend and what this court has consistently said our rule is, which is that we need an actual conflict to exist before we put a judge into this realm of uncertainty. Because, I mean, I think that the fundamental difference is if you've got a conflict, then there is an interest in potentially respecting another sovereign's line of precedential authority and having the courts in this state apply that state's law. If there's no actual conflict between this state and another, and there's just somebody who doesn't get to make precedential law predicting it, and, as Your Honor pointed out, two unpublished decisions at the trial court level, then we really don't have any sort of meaningful rule requiring an actual conflict before we deviate from Illinois law. And once you are in the realm of applying another state's law, then certainly whatever sources are available, I think, are fair game. But the Supreme Court and this court have both stated a rule, and I think it's a good rule that we are not going to get away from litigants in this court having the benefit and certainty of Illinois law. You're saying that we should just ignore federal courts completely, because you have a federal court sitting in Indiana, even though they may be unpublished, but you're saying it doesn't matter, ignore them. That should be the law. I think it is the law. Well, you can't tell me any other state that has come down that way, and it appears that this is an anomaly, because would it make sense that state courts then should, let's say that they were published, and let's say there's 20 of them. There's 20 federal courts in Indiana that have come down the same way, I hypothetically. And what you're saying is just because a court of the state has not issued an opinion on it, we ignore those 20 decisions, there's no conflict. That's what you're saying. It doesn't matter how strong it is in the state courts, we ignore it. Let me put it this way. If you had 20 opinions, most likely at least one of them might discuss some actual state law on which there might be a conflict. Hypothetical? It may not. In Indiana, it's not as big a state as Illinois. There's not as much class action, I assume there's not as much class action disputes taking place. These issues may not come up as often, and therefore it might be more likely, because class action is more likely now to be in federal court and in insurance cases, or that you'd have federal law rather than cases and judges making these decisions. But it really goes to the crux of your argument. The question is, does the federal judges' decisions mean anything? You're saying no, they mean nothing. They are what they are, which are predictions. They are predictions of the other state's law. To be ignored. Predictions do not create an actual conflict. And an actual conflict is what our Supreme Court and this Court has said is necessary to create a conflict of law. So in the context... Where does the word, well, isn't that an actual conflict when the prediction is opposite of Illinois law? No. I don't think it is. I mean, it's no different than if I predicted it might be different because of the way I... No, it's not you. It is the Court. My study of the Indiana Supreme Court. Well, but that's what was done here. You have the judges and federal courts studying the law of Indiana. They're not just... Well, and, Your Honor, if I could segue into that, that's really not what we have here. And I think counsel was illuminating in her presentation when she basically said, you've got two Indiana courts following American states. There is nothing in any of those three opinions that analyzes Indiana law. The only Indiana case cited in any of the opinions is a case called Auto Owners v. Harvey, which is all about the standards for property damage coverage and which reads almost verbatim to this Court's opinion in Shelburne. So far from anything in those predictions to support an actual conflict between Illinois and Indiana law, the decisions, if anything, support the notion that there is no conflict and the federal courts just would predict both states would come out differently than the Illinois Supreme Court actually has in Swiderski and six days ago in Lay. So, I mean, I think that the ex-data rule makes sense. I think the ex-data rule is consistent with the jurisprudence requiring a conflict. That need not be a rule. I mean, the Supreme Court could issue a standard that says trial courts go ahead and decide what state has the most significant contacts with a particular dispute and then do your best to guess at what that state would do. That's essentially the standard that the federal courts, when dealing with state law, follow. That's not our standard. And there's no suggestion from State Farm that there's anything supporting a deviation from the Supreme Court's rule that you need an actual conflict. How do you explain the Schutz case? The Schutz case involved an actual conflict between statutory and state court precedential law. And there was a disagreement in the Supreme Court about whether those decisions truly diverged. The majority said they did. The minority, the dissent said they did not. But that was not a situation where it was mere predictions. And, again, the insurer, if they want to be in a posture other than what our Supreme Court and this court has said the rule is in a default circumstance, they're free to put a choice of law provision in their contract. And this court has consistently held that such provisions will be honored. Likewise, where litigants agree in litigation that a case should be decided under a foreign law, if there's some sort of rational basis to support it, this court and the courts of the state have tended to honor those agreements. But the rule, again, where there is no such agreement, there's no hint that there's an agreement here, there's no question that there's no choice of law provision in the policy, in these circumstances, in order to get away from familiar Illinois law and, frankly, settled Illinois law in this context, you would need to show something that's different in the state. Now, I'm not saying it has to be a state decision on the same precise subject matter, but at least it would be perhaps a rule of policy construction that's different. We've, in our brief, completely unrebutted, gone through item by item on the analysis that courts go through in interpreting insurance policies in the two states, and they are identical. So, essentially, what you're being asked to do here is not apply a conflicting prediction of another state's law. You're being asked to apply a federal decision following a Seventh Circuit decision that the Illinois Supreme Court has rejected. And this court, I think, rightly rejected that argument in X data. I think it should reject it again. To the extent that the court is inclined to look at which state has the most significant contacts here for any reason, I think it's bizarre that in a circumstance where it's a tripartite dispute among three entities, all of which are Illinois residents, that you would end up with something other than Illinois. State Farm is an Illinois insurer. The insured here is Mr. Jerry Clark, who is an Illinois resident. The name on the policy is Jerry Clark. State Farm's entire argument is that his unincorporated business, which has an address in Indiana, makes it an Indiana policy. But, as we've argued in the brief, there's no support for looking at the domicile of an entity that doesn't exist. So, even in this particular case, and I guess this would be the one difference from X data, in this case, even if you were to consider which state has the most contacts for any reason, it would be Illinois. But, again, there is nothing out of the canon of Indiana jurisprudence that's been put before this court that should make this court believe that there is any sort of outcome determinative conflict. And, given that that's the case, Illinois law applies under the well-established rule of law in the state. Thank you, Your Honor. Thank you very much. Your Honors, this is not the X data case. Counsel made that argument to the trial court and said that it was the exact same case there. It was not there either. It's not here. The difference, a very significant difference, well, there's several, but the most significant one is the fact that Sears Roebuck was not presented to the X data court. The conflict, the friction between the Sears Roebuck holding that allows trial courts the discretion to look to federal district court opinions for purposes of ascertaining a sister state's law and how that comports or does not comport with the proposition that that entire body of case law needs to be ignored for a conflicts analysis was not considered. Another difference is that the Shudd's opinion was misrepresented in that case, too. The Shudd's opinion was cited here as the majority holding, as they represented the holding being that unless where the state is silent and the only cases are predictive persuasive authority, then there is no conflict, no actual conflict or true conflict. Those are the buzzwords that have been used this morning. But that's not what the Shudd's case represents. The Shudd's case, which is a United States Supreme Court opinion, states, in that case, went to a most significant context analysis in the constitutional context because Texas law, the manner in which a district court opinion, again, persuasive, not binding authority, conflicted and came out a different way than the Kansas law did. The Oklahoma law also came out differently than Kansas. And because of that, the court went to the constitutional considerations that were raised and found that it was too arbitrary for the Kansas Supreme Court to apply Kansas law to the entire class. So you're saying your prediction should not be ignored? The prediction of the Indiana district court should not be ignored. It cannot be ignored. So the argument was just prediction so that we shouldn't ever consider it in Illinois? No. What X data does is it invites the court to further constrain trial courts. Another difference or what this court has the opportunity to do here is look at the impact of X data. X data is an anomaly. It's the only one of its kind. It's the only court or the only opinion in the country that constrains a court in its judicial process. For the artificial distinction of a conflicts test. Because under the premise that somehow a prediction cannot ever, ever, ever result in a conflict. But that's not what happened in Schutz. Schutz said that it could and that potential then led to the significant context analysis or constitutional analysis in that case. Similarly here, the trial courts have the discretion under Sears Roebuck to look to a sister state's law for ascertaining another sister state's law. Why not allow them? Why prevent them from doing that considering that authority in a conflict scenario? The only reason to do so is to cement the form shopping that has been completed here and will be completed in future cases. The statement that predictions can't create conflicts is simply incorrect. It's not supported by Schutz. It's not supported by just rational common sense. Because that's exactly what predictions are. They're predictions of what that state's law is. That's representative of that state's law. That's a data point that a court in ascertaining the law can use. There's no reason to prevent them from using it in one context and yet allow them the discretion to use it in another. We're only looking for uniform application and uniform deference to persuasive authority. It's either persuasive all the time or it's not. It can't be persuasive when it's convenient for Bridgeview. And that's another point that needs to be illustrated here. Bridgeview likes the ex data rule because it goes in its favor. But if they were in a situation where a state court had already ruled against coverage and they would be the first ones relying on a predictive authority from another state to argue that that state's law applied. So another test of the integrity of an argument is could they live with it if it was the other side? They can't. And they haven't. In fact, in their brief, they cite to several cases which are predictions of another state's law to encourage this court to say, well, because the majority is rolling in this direction, which it's not a true majority, but if the majority is rolling in this direction, then ex data is okay because Illinois law, Indiana law is going to eventually be the same as Illinois law. But we won't know. And we won't know in this case what an Indiana state court would have done because Bridgeview prevented Indiana state court from retaining jurisdiction over this matter. With respect to the representation that the contacts here have to be significantly in Illinois only because State Farm is headquartered in Bloomington, Bridgeview is located in Indiana, and the individual business owner is located here in Illinois, is incorrect. The policy is addressed to Jerry Clark, DBA, his business, Affordable Digital, with the address of Terre Haute, Indiana. It bears an Indiana prefix for policy numbers. It was serviced in Indiana, had an Indiana claim number. The tender was made in Indiana, assessed in Indiana, evaluated under Indiana law, and purchased and paid for in Indiana. The only tie that Illinois has, aside from State Farm being located here, is that the circuit court happens to have jurisdiction, or the northern district happens to have jurisdiction over the TCPA class action complaint. Even Justice Stevens in his dissent said that that was too arbitrary a contact to warrant application of the forum law, derogation of the alternative forum. Ex data is an unworkable, solitary, out there on its own rule. It has not been followed by a single court, and it wreaks havoc with established jurisprudence. The better reasoned approach would be to allow district courts to have the discretion in a uniform manner. They have the discretion to look at persuasive authority for ascertaining. They should have that same discretion that should be afforded them for ascertaining whether a conflict exists. What the Bridgeview argument was here was, well, the prediction is inaccurate. We never got there. The trial court was not even allowed to make that determination on her own. That is her judicial process. That is what she is empowered to do. And we know what the arguments are going to be from Bridgeview, but what we don't know is what the judicial process will result in. And that is what Safe Arm is looking for, for this court to find that federal predictions, eerie guesses, if you will, are data that a trial court has access to and the discretion to consider to determine whether there is a conflict. Let me just ask one question. If there had been no Seventh Circuit cases or no district court Indiana cases, then you would agree that there is nothing to look at, or would you? Well, I wouldn't necessarily say that there is nothing to look at. There is always something to look at. It is just a question of what you can look at. And the sources of state law are varied and different. Obviously, everyone agrees that the best predictor or the best statement of state law would be the State Supreme Court of that form and then intermediate courts, and then you look to other sources. I would say there is nothing in the Supreme Court, intermediate court, or federal court. Then you would look to collateral sources, commentaries, notes, such as what the Sterling Court did in evaluating the scope of the attorney-client privilege under New York law. It went to the commentaries. And it noted, this is not persuasive, we know it is not binding, but this explains New York law. And based on that, found a conflict. The analysis should still be made. The analysis should still be conducted. It should not be preempted. For those reasons, Your Honor, State Farm requests that this Court reverse the grant of summary judgment and remand with further instructions. Thank you very much. Thank you. I would like to compliment the attorneys on their arguments and on their briefs. This case will be taken under advice. Thank you very much.